UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID WILSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:23-cv-869 NCC |
| ANNE PRECYTHE, et al., | ) ) ) |
| Defendants. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

Self-represented Plaintiff David Wilson brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The Court previously granted Plaintiff *in forma pauperis* status and reviewed his § 1983 complaint under 28 U.S.C. § 1915. ECF No. 8. Based on that review, the Court directed Plaintiff to file an amended complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned Plaintiff that amended pleadings would also be reviewed under § 1915. *Id.* In response, Plaintiff filed both an Amended Complaint (ECF No. 9) and a Second Amended Complaint (ECF No. 11).

As such, this matter is now before the Court upon review of Plaintiff's most recent pleading, his Second Amended Complaint, under 28 U.S.C. § 1915. Based on such review, the Court will partially dismiss the Second Amended Complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the pleading. In addition, Plaintiff has filed a second motion contesting the statute-mandated collection of filing fees in this matter. ECF No. 16. This motion to rescind his filing fee charge – like his first motion requesting that the fee be waived (ECF No. 10) – will be denied. *See* ECF No. 17.

**Case Background**

Plaintiff filed the original 42 U.S.C. § 1983 complaint in this matter with thirteen other prisoner plaintiffs, also incarcerated at the Missouri Eastern Correctional Center ("MECC"), on July 10, 2023. ECF No. 1. Because the Court does not allow multiple self-represented prisoners to proceed *in forma pauperis* in a single lawsuit, the Court issued an Order striking the thirteen additional plaintiffs from the case and opening new cases for each of them. ECF No. 6. On July 28, 2023, the Court granted Plaintiff's motion to proceed *in forma pauperis*, assessed an initial partial filing fee of $5.65, and directed Plaintiff to file an amended complaint. ECF No. 8.

Plaintiff filed an Amended Complaint on August 9, 2023 (ECF No. 9), and then five (5) days later, he filed a Second Amended Complaint (ECF No. 10). Because the filing of an amended pleading completely replaces all previously filed complaints and supplements, the Second Amended Complaint is the operative complaint and is the only pleading that will be reviewed. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect"). Any claims from the original Complaint or Amended Complaint that are not included in the Second Amended Complaint, will be deemed abandoned and will not be considered. *Id*.

Finally, on August 16, 2023, the Court received Plaintiff's initial partial payment of $5.65. ECF No. 13. Soon after, the Court initiated the process of collecting installment payments from Plaintiff's prison account for the remaining fees due, as required under federal statute 28 U.S.C. § 1915(b)(2). ECF No. 15. Plaintiff filed a motion for reconsideration, asking the Court to consider waiving the remaining amount of the fee that was due. ECF No. 10. The Court denied that motion on November 28, 2023. ECF No. 17. In that same Order, the Court denied Plaintiff's motion for an injunctive order to compel preservation of certain evidence (ECF No. 14). *Id.*

**Motion to Rescind Filing Fee Charge**

On November 21, 2023, the Court received a filing from Plaintiff stating that "$349.35" was recently taken from his prison inmate account for this case and that his prison account balance "never exceeds $7.50 per month." ECF No. 16 at 1. Plaintiff then requests that the Court issue an Order "rescinding the filing fee." *Id.* Plaintiff seems to be asserting that since the Court granted his motion to proceed *in forma pauperis* in this action, he should get his $349.35 back.[1]

As discussed in the Court's November 28th Order denying Plaintiff's motion for reconsideration of the filing fee, pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. The payment of filing fees and costs by prisoners through withdraws from their prison account over time, is mandated by federal statute. *See* 28 U.S.C. § 1915(b)(2). It is not up to the discretion of the Court. As such, Plaintiff's motion to rescind filing fee charge will be denied.

**Review of Second Amended Complaint**

**I.      Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered

---

[1] The Court notes that based on correspondence with the Missouri Department of Corrections Offender Finance Office on December 12, 2023, only $10 has been withdrawn from Plaintiff's case for filing fees for this case.

within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## II.  Summary of Second Amended Complaint

Plaintiff is an inmate at Missouri Eastern Correctional Center ("MECC"), a Missouri Department of Corrections ("MDOC") facility in Pacific, Missouri. ECF No. 1 at 1.  He brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against three defendants: (1) Anne Precythe (Director of MDOC); (2) Gregory Hancock (Warden at MECC); and (3) Sargent Nathen McDaniels (Correctional Officer at MECC). *Id.* at 1, 3.  His claims are brought against these defendants in both their individual and official capacities. *Id.* at 1.

Plaintiff's Second Amended Complaint is based on the allegation that he was unnecessarily placed into plastic restraints, without regular wellness checks, for an excessive amount of time. *Id.* at 7-10.  He calls the incident a "completely unjustified and unprovoked use of force that's

shocking to the conscience," "cruel and unusual punishment," and "unnecessary cruelty [that] is constitutionally forbidden." *Id.* at 10.

According to Plaintiff, at 1:15 am on March 23, 2023, Plaintiff was awakened by a Correctional Emergency Response Team ("CERT") in his housing wing at MECC. *Id.* at 7. Plaintiff and his cellmate had to strip and then redress, after which they were placed into "linkless riot cuffs, not the traditional mechanical restraints with links" in a "binding and unnatural position." *Id.* at 7, 10. With the cuffs on, Plaintiff and other prisoners were escorted down some stairs to the "dayroom" and "placed onto the cold concrete floor." *Id.* at 7-8. CERT then left the area, without searching the unit or individual cells. *Id.* at 7.

Plaintiff states that after approximately thirty (30) minutes, he stood up because he "began to ache excessively all over." *Id.* at 8. After approximately two hours, the cuffs "because dangerous instruments … because the hard plastic apparatus was embedding itself into [Plaintiff's] skin causing an unexplainable sensation in [his] hands." *Id.* At that time, Plaintiff was able to slip one hand out of the cuffs, but he "almost broke" his thumb in the process. *Id.* After "almost four hours" of "unnecessary and wanton infliction of abuse," the Warden and CERT cut Plaintiff's restraints. *Id.* at 9.

Plaintiff also complains about the suffering of other prisoners during this incident. Plaintiff alleges that within fifteen minutes of their placement in the dayroom, a fellow cuffed inmate suffered a violent seizure, for which Plaintiff feels the correctional officers did not respond to in a timely manner. *Id.* at 7-8. In general, Plaintiff asserts that many prisoners were "crying out for assistance and relief" from the cuffs. *Id.* at 8. Another inmate who was also a close of friend of Plaintiff's, collapsed when his shoulder popped out of the socket. *Id.* at 8-9. After three hours in cuffs, another inmate started having chest pains and anxiety. *Id.* at 9. Plaintiff even attached another inmate's grievance filings pertaining to the incident at issue (*id.* at 17-20), and states that

he wishes to "humbly adopt[]" this "IRR/Grievance because the elements, complaint and experiences are identical." *Id.* at 15.

Plaintiff alleges that during this incident, CERT did not even search all the cells and that there was "zero prison disturbance, threat, unrest, [or] exigent circumstance[] that would justify" the level of force used. *Id.* According to Plaintiff, this assertion (concerning the lack of serious threat) is substantiated by the fact that certain inmates who work in food service and who were supposed to go to work, had their restraints cut while others (including Plaintiff) remained cuffed. *Id.* at 11. Plaintiff alleges that this incident caused him "irreparable mental and emotional trauma." *Id.* at 9. He states that the Warden and staff "refused to assess [his] restraints" and "deliberately disregarded" medical concerns. *Id.* He asserts that no "wellness checks" were done and that there was no cause for the restraints in the first place. *Id.* at 10.

As to Warden Hancock specifically, Plaintiff asserts that the Warden ordered this use of force and therefore he is responsible for the damage caused. *Id.* at 11. Plaintiff further alleges that the Warden should be criminally charged, claiming that he violated a Missouri statute on the use of force on offenders in MDOC care, and that he conspired to commit assault. *Id.* (citing Mo. Rev. Stat. § 217.405).

As to Sargent McDaniel, Plaintiff states that he "failed to assess and/or test for tightness of cuffs after several request[s]." *Id.* Plaintiff alleges that McDaniel failed to protect the inmates from injury by not "doing the right thing" and cutting off their restraints when he witnessed their suffering. *Id.* Plaintiff argues this amounts to deliberate indifference and that such failure to report abuse should result in sanctions under Missouri law. *Id.* (citing Mo. Rev. Stat. §§ 217.405, 217. 410, & 217.415).

For relief, Plaintiff seeks money damages against the defendants in their individual capacities. *Id.* at 6, 13. As for his official capacity claims, Plaintiff states that he would like an

"independent constituency service" that is dedicated to investigating assaults on offenders and which will provide full disclosure of all findings and evidence; award monetary fines; and punishment violators. *Id.* at 13.

### III. Discussion

Based on a careful review and liberal construction of the allegations of Plaintiff's Second Amended Complaint, the Court will direct the Clerk of Court to issue process as to Plaintiff's claims of Eighth Amendment violations against defendants Warden Hancock and Sargent McDaniels, in their individual capacities only. Because Plaintiff makes no specific, personal allegations against MDOC Director Anne Precythe, his claims against Precythe will be dismissed for failure to state a claim upon relief may be granted under 28 U.S.C. § 1915(e)(2)(B). Furthermore, as Plaintiff has been previously warned, he lacks standing to bring claims on behalf of other prisoners. To the extent that he is again attempting to assert claims for fellow inmates in his Second Amended Complaint, these claims are also subject to dismissal. Finally, Plaintiff's official capacity claims against the MDOC-employed defendants, fail to state a § 1983 claim for relief and will also be dismissed.

a. **Eighth Amendment Excessive Force Legal Standard**

The Eighth Amendment's prohibition on cruel and unusual punishment, as applied to States through the Fourteenth Amendment, limits the conditions in which a State may confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

According to the Supreme Court, the question in Eighth Amendment excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). The use of excessive physical force against a prisoner may constitute cruel and unusual punishment even if the prisoner did not suffer serious injury. *Id.* at 9. As such, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). "Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38.

"Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

### i. Defendant MDOC Director, Anne Precythe

Plaintiff fails to state a claim against MDOC Director Anne Precythe because he never states any allegations against her in his Second Amended Complaint. Plaintiff does not mention defendant Precythe anywhere in the factual allegations of his Second Amended Complaint or in the section titled: "What each defendant personally did to me." ECF No. 11 at 7-12. Plaintiff fails to allege facts that show how Precythe is causally linked to, and directly responsible for, violating his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983

requires a causal link to, and direct responsibility for, the alleged deprivation of rights); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

As a result, Plaintiff's claims against Precythe fail to state a claim upon which relief may be granted. *See also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

### ii. Defendants Hancock and McDaniels

Unlike with defendant Precythe, Plaintiff does allege specific factual allegations against Warden Hancock and Sargent McDaniels, including that they were personally involved in, and directly responsible for the alleged unconstitutional conduct. Although "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement," Plaintiff alleges that Warden Hancock was involved in the CERT raid and that he helped cut off inmate cuffs after the four-hour ordeal. *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). As for McDaniels, Plaintiff asserts that he was present during the incident and that he refused to respond to requests for assistance and complaints of pain.

Generally, Plaintiff asserts that he suffered cruel and unusual punishment when Warden Hancock ordered the CERT team to wake inmates in the middle of the night, cuff them, force them

out of their cells, and leave them cuffed for almost four hours in the dayroom while there was no apparent threat or cell search. Plaintiff states that he suffered pain and numbness in his hands, almost broke his thumb, and ached all over his body. He made his complaints to McDaniels but received no relief. Plaintiff alleges that there was no objective need for force because there was no threat and no cell search, and even if there was a need, the cuffing of the prisoners for almost four hours was unreasonable and should have been tempered by the defendants.

The Court finds that Plaintiff's Second Amended Complaint sufficiently alleges that the force applied was not in a good-faith effort to maintain or restore discipline, but instead, maliciously and sadistically caused harm by intentionally causing pain for a significant period of time. As such, the Court will direct that process issue on Plaintiff's claims under the Eighth Amendment against Warden Gregory Hancock and Sargent Nathen McDaniels.

### b. Dismissal of Claims Brought on the Behalf of Others

As discussed in the Court's July 28, 2023, Order issued in this case, Plaintiff lacks standing to bring claims on behalf of other prisoners. *See Martin*, 780 F.2d at 1337 (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"); *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (explaining that plaintiff did not have "standing to assert" a constitutional claim on behalf of another person). Rather, Plaintiff must allege a personal loss. *See Sargent*, 780 F.2d at 1337.

Standing is a jurisdictional requirement that can be raised by the court sua sponte at any time during the litigation. *Delorme v. U.S.*, 354 F.3d 810, 815 (8th Cir. 2004). Generally, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A non-attorney, self-represented litigant (like Plaintiff) may not represent someone else in federal court. *See* 28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142

F.3d 553, 558 (2d Cir. 1998) (stating that "because *pro se* means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Lewis v. Lenc–Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) (stating that non-lawyers may only represent themselves because "an individual may appear in the federal courts only *pro se* or through counsel.").

As such, to the extent that Plaintiff's Second Amended Complaint attempts to bring claims on behalf of other prisoners, Plaintiff lacks standing, and therefore, jurisdiction, to bring such claims.

### c. Dismissal of Official Capacity Claims

Plaintiff brings his claims against the three defendants in both their individual and official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, because all defendants are MDOC employees, naming them in their official capacities is equivalent to naming the government entity that employs them – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. As such, Plaintiff's official capacity claims against MDOC defendants are all subject to dismissal for failure to state a § 1983 claim.

**Conclusion**

The Court will direct the Clerk of Court to issue process or cause process to issue upon the Second Amended Complaint as to defendants Gregory Hancock and Nathen McDaniels, on Plaintiff's claims of Eighth Amendment excessive force, brought against these defendants in their individual capacities. Plaintiff's claims against Anne Precythe and Plaintiff's official capacity claims against all defendants, will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B). To the extent that Plaintiff again attempts to bring claims on behalf of other inmates, these will be dismissed for lack of jurisdiction. Finally, Plaintiff's motion to rescind filing fee charge will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to rescind filing fee charge [ECF No. 16] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall update the docket sheet name for defendant "Sgt. McDaniels" to "Sgt. Nathen McDaniels."

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the Second Amended Complaint as to defendants Gregory Hancock and Nathen McDaniels, with regard to Plaintiff's Eighth Amendment claims brought against these defendants in their individual capacities. Defendants shall be served with process in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections Employees.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Second Amended Complaint as to defendant Anne Precythe because, as to this defendant, the Second Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendant Anne Precythe are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Second Amended Complaint as to claims brought by Plaintiff on behalf of other inmates.  These claims are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Second Amended Complaint as to claims brought by Plaintiff against defendants in their official capacities. Plaintiff's official capacity claims are **DISMISSED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 18th day of December, 2023.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE